Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

*Attorneys for Plaintiff and Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS NIEMCZYK, individually, and on behalf of a class of similarly situated individuals,<br><br>         Plaintiff,<br><br>    v.<br><br>PRO CUSTOM SOLAR LLC, D/B/A MOMENTUM SOLAR<br><br>         Defendant. | **No.:**<br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff, Thomas Niemczyk brings this action against Pro Custom Solar LLC doing business as Momentum Solar ("Momentum" or "Defendant"), by and through his attorneys, individually and behalf of all others similarly situated ("Class Members"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation, and information and belief.

**INTRODUCTION**

1. Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited telemarketing calls made by or on behalf of Defendant. Plaintiff, individually, and for Class Members, seeks an injunction

and an award of statutory damages to Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

2. Plaintiff Thomas Niemczyk is a natural person. Mr. Niemczyk was a resident of Melville, New York at all times during the events alleged in the Complaint. At all relevant times Mr. Niemczyk was the user, subscriber, owner and possessor of the cellular telephone number (516) 443-XXXX.

3. Defendant Momentum is, and at all relevant times was, a limited liability company organized under the laws of the State of New Jersey, with a principal place of business located at 325 High Street, Metuchen, New Jersey, and is a "person" as defined by 47 U.S.C. §153 (39).

## JURISDICTION AND VENUE

4. The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *Cf. Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

5. This Court has personal jurisdiction over Momentum, because it is a New Jersey Corporation, maintains its headquarters in New Jersey, does business in the State of New Jersey, and because the wrongful acts alleged in this Complaint were committed in and/or caused injury in New Jersey.

6. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that

"automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368 (2012) ("The Act bans certain practices invasive of privacy").

8. The TCPA makes it unlawful for any person to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

9. With respect to telephone numbers assigned to a cellular telephone service, the TCPA states that it is "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . .cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The Federal Communications Commission ("FCC") has promulgated regulations under the TCPA which also require that sellers and telemarketers maintain an "internal do-not-call list" ("IDNC" list) — i.e., a "list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]" — and further prohibits sellers from "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). Cf. 47 U.S.C. § 227(b)(1).

11. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

12. The FCC has also confirmed that a party can be vicariously liable for autodialed calls that are placed by third parties in violation of Section 227(b) of the TCPA and that subsection's corresponding regulations. *See In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013). *Accord, Jenkins v. National Grid USA*, No. 15-cv-1219, 2017 WL 1208445, *3 (E.D.N.Y. Mar. 31, 2017); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, *3 (E.D.N.Y. July 3, 2014).

## FACTUAL ALLEGATIONS

13. Momentum is in the business of selling and installing solar panels, and engages in telemarketing to generate sales leads.

14. Defendant and/or its agents regularly makes autodialed telephone calls both with and without a pre-recorded message to consumers in order to market its services.

15. Plaintiff has never authorized Momentum to make autodialed marketing calls on his cellular telephone.

16. Plaintiff does not have any relationship with Momentum and never solicited Defendant's business directly or indirectly.

17. Over the years Plaintiff has received many autodialed and/or pre-recorded telephone calls by or on behalf of Momentum to his cellular phone number.

18. Momentum has made it virtually impossible to avoid these calls by constantly changing the phone number that these calls appear to be made from, thereby avoiding systems designed to block phone calls from identified phone numbers.

19. Momentum knowingly tries to avoid such blocks by faking (often referred to as "spoofing") what number is calling and will show up on caller ID. In fact, most of the spoofed numbers utilized by Momentum are invalid or non-working telephone numbers.

20. Momentum further conceals its improper and illegal telephone calls by affirmatively trying to conceal their identity during the telephone calls unless the called party expresses interest. For instance, when Plaintiff would seek confirmation of the name of the company calling him or seek to be placed on their IDNC list, he would often be hung up on.

21. To combat Momentum's strategy -- and confirm who was calling him -- Plaintiff learned that you had to initially feign the possibility of interest in the offer to get a Momentum employee on the phone with the authority to receive his request that all calls to him cease and he be placed in the IDNC list.

22. Momentum has advised the Plaintiff that his cellular phone number was placed on Momentum's IDNC list on November 28, 2017. Despite being placed on its IDNC list, Plaintiff continued to receive numerous autodialed calls to his cellular telephone. Throughout 2018, Plaintiff received many autodialed calls from Momentum and several times was able to speak with its employees who confirmed that he was indeed on their IDNC list and he should not be receiving telephone calls.

23. Most recently, on February 12, 2019, Defendant initiated a marketing call

purportedly from (516) 231-9620 to Plaintiff's cellular phone using a automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1). On this telephone call, the caller asked Plaintiff a set of "qualifying" questions in order to be connected with a sales agent. Plaintiff was connected to a sales agent and was then transferred to a Momentum employee named "Danny Miller" at (732) 902-2550 extension 1457.

24. Plaintiff did not provide Momentum or its agents with "prior express consent," nor written consent to receive calls to his cellular telephone, including those calls by means of an ATDS as prohibited by 47 U.S.C. § 227(b)(1)(A).

25. Plaintiff did not consent to be called on his cellular telephone by Momentum for marketing or any other purpose.

26. Upon information and belief, Momentum's telephone equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

27. Upon information and belief, the telephone equipment used by Momentum to place the calls at issue has the capacity to dial telephone numbers automatically from a stored list or database without human intervention, using a random or sequential number generator.

28. Momentum did not have written consent to place telemarketing calls to Plaintiff's cellular telephone.

29. Momentum's telemarketing calls were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A).

30. Plaintiff was personally affected by Momentum's aforementioned conduct because he was frustrated and distressed that Momentum repeatedly interrupted him with unwanted telemarketing calls using an ATDS for marketing purposes.

31. The February 12, 2019, autodialed call made by Momentum was particularly distressing. On that date, Plaintiff's father was in the hospital in the intensive care unit after suffering from a heart attack. Plaintiff was regularly receiving calls from his father's physicians to update him on his father's condition. As a result, Plaintiff had to answer every call he received, even those from unknown phone numbers, to ensure he did not miss an important call from a physician. During this period, every time Plaintiff's phone would ring he would get anxious and nervous, fearing he was about to get news that his father's health was declining. In the midst of this, Plaintiff received the subject autodialed telemarketing call from Momentum. Plaintiff was disgusted that this improper and illegal call was made forcing him to take his focus away from his family. Hour after this call, Plaintiff learned that his father was not going to survive, and he ultimately passed away the following day, February 13, 2019.

32. Despite receiving multiple calls from Momentum, through this Complaint Plaintiff only seeks damages related to the February 12, 2019 call.

33. Through Momentum's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

34. Momentum's call forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones by occupying their cellular telephone with one or more unwanted calls, causing a nuisance and lost time.

35. Plaintiff is informed and believes and here upon alleges, that the calls were made by Momentum and/or its agent(s), with Momentum's permission, knowledge, control and for Momentum's benefit.

36. Momentum's calls annoyed and frustrated Plaintiff, distracted Plaintiff, and

invaded Plaintiff's privacy.

37. Through the aforementioned conduct, Momentum has violated 47 U.S.C. § 227(b)(1)(A)(iii).

## CLASS ACTION ALLEGATIONS

38. **Class Definitions**: Plaintiff brings this Complaint against Defendant, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Classes:

> **Robocall Class:** All persons in the United States who received one or more telemarketing calls to their wireless telephone numbers by or on behalf of Momentum, that were made using an autodialer or an artificial or prerecorded voice, from March 5, 2015 through the date the Court certifies the class.
>
> **Residential Class:** All persons in the United States who received one or more telemarketing calls to their residential (wireless or landline) telephone numbers by or on behalf of Momentum, that were made using an artificial or prerecorded voice, from March 5, 2015 through the date the Court certifies the class.
>
> **Internal Do Not Call Class ("IDNC Class"):** All persons in the United States who received at least two telemarketing calls to their residential (wireless or landline) telephone number by or on behalf of Momentum within any 12-month period at any time from March 5, 2015 through the date the Court certifies the class.

39. Excluded from the classes is Defendant, its affiliates, employees, officers and directors, persons or entities, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

40. There is a well-defined community of interest in the litigation and the classes are readily ascertainable.

41. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single

action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control.

42. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the classes. Plaintiff is not different in any relevant way from any other member of the classes, and the relief he seeks is common to each class.

43. <u>Commonality</u>: Plaintiff's and Class Members' experiences receiving calls by or on behalf of Momentum are common. They received multiple, incessant, uninvited calls that included autodialed and/or prerecorded message/artificial voice for the purposes of marketing Momentum's products or services. The calls were made irrespective to whether Plaintiff and Class Members were on the National Do Not Call Registry, Internal Do Not Call List and their requests that the calls cease.

44. In addition, common questions of fact and law exist as to all members of the classes and predominate over the questions affecting only individual members of the classes. Identification of the individuals who qualify as a member of the classes will be sufficient to establish liability to the class member. The predominant common questions include:

  a. Whether Defendant and/or its agents used an ATDS and/or "artificial or prerecorded voice" when placing calls, as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

  b. Whether Defendant is vicariously liable for its agents' calls;

  c. Whether Defendant and/or its agents had legally effective consent to place telemarketing calls to Plaintiff and class members;

  d. Whether Defendant and/or its agents instituted procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity;

  e. Whether Plaintiff and Class Members are entitled to damages, including

whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages;

f. Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

45. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and TCPA class actions, and Plaintiff intends to prosecute this action vigorously.

46. <u>Predominance and Superiority</u>: The classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class Members to individually obtain effective relief from Defendant's misconduct. Even if Class Members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

47. <u>Generally Applicable Policies</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to each class as a whole. The policies of the Defendant challenged herein apply and affect members of each class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

48. <u>Injunctive Relief is Appropriate</u>: Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class Members for which they have no adequate remedy at law. In particular, Plaintiff seeks the following specific relief:

   a. Require Defendant to retain call records;

   b. Require Defendant to retain proof of any express consent to receive telemarketing calls;

   c. Require Defendant and its agents from making telemarketing calls using an ATDS and/or prerecorded voice to any person that has not provided express consent to receive such calls;

   d. Require Defendant to maintain an internal do not call list and take steps to ensure that neither Defendant, nor its agents, initiates phone calls to any person on that list;

   e. Prohibit Defendants from hiring telemarketers which do not comply with state regulations to maintain a valid license, registration, and/or bond to call customers/prospects residing in that state.

The presence of Plaintiff and other class members' information on Defendant's lead lists exposes them to further calls from Defendant and their agents in the future.

## VIOLATIONS ALLEGED

### COUNT I
### Violation of 47 U.S.C. § 227(b)(1)(a)(iii)
### (Individually, and on Behalf of the Robocall Class)

49. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint. Plaintiff asserts this claim on behalf of himself and the

members of the Robocall Class.

50. The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . .

47 U.S.C. § 27(b)(1)(A).

51. The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may . . . bring . . . an action based on a violation of [47 U.S.C. § 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both . . . If the court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].

47 U.S.C. § 227(b)(3).

52. Defendant makes outgoing calls to consumers and others in the regular course of its business.

53. Defendant placed calls to Plaintiff and other Robocall Class Members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which Defendant called at the time the call was made. Rather, the predictive dialers electronically dialed the Robocall Class Members' cellular telephones in an automated fashion. The predictive dialers are capable of storing,

producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

54. Defendant also utilized artificial and/or prerecorded voice calls to call the cellular telephones of Plaintiff and Robocall Class Members.

55. Defendant does not and did not obtain legally effective prior express consent to call the Robocall Class Members' cellular telephone numbers.

56. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to Plaintiff and the other members of the Robocall Class that were automatically dialed by Defendant's telephone system and/or used an artificial or prerecorded voice; made to a cellular telephone number; and not as the result of the Robocall Class Member's transaction with Defendant or its agents.

57. Defendant's violations are willful because Defendant knew that Plaintiff and members of the Robocall Class had not given prior express consent to receive calls made using an automatic telephone dialing system, artificial, and/or prerecorded voice and that Defendant used these methods to call the cell phones of Plaintiff and Robocall Class Members.

58. Plaintiff, on his own behalf, and on behalf of the other members of the Robocall Class, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendant.

### COUNT II
### Violation of 47 U.S.C. § 227(b)(1)(B)
### (Individually, and on Behalf of the Residential Class)

59. Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this Complaint. Plaintiff asserts this claim on behalf of himself and the members of the Residential Class.

60. The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TPCA makes it unlawful for any person:

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B).

61. The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations of 47 U.S.C. § 227(b) or "regulations prescribed under" 47 U.S.C. § 227(b) "to enjoin such a violation" and/or to recover actual damages or "$500 in damages for each such violation," as well as treble damages where the "court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b).]" 47 U.S.C. § 227(b)(3).

62. Defendant and its agents also utilized artificial and/or prerecorded voice messages in calls to the residential telephones of Plaintiff and Residential Class Members.

63. Defendant and its agents do not and did not obtain legally effective prior express consent to call the Residential Class Members' residential telephone numbers.

64. Defendant and its agents violated 47 U.S.C. § 227(b)(1)(B) by placing telephone calls to the residential telephone numbers of Plaintiff and the other members of the Residential Class using an artificial or prerecorded voice without their prior express written consent.

65. Defendant willfully violated 47 U.S.C. § 227(b)(1)(B) because it knew that

Plaintiff and the other Residential Class Members had not given prior express consent to receive calls made using an artificial, and/or prerecorded voice and that Defendant and its agents used these methods to call the residential telephone numbers of Plaintiff and the other Residential Class members.

66. Plaintiff, individually, and on behalf of the other members of the Residential Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3) against Defendant.

## COUNT III
### Violations of the TCPA, 47 U.S.C. § 227 (c)(5)
**(Individually, and on Behalf of the Internal DNC Class)**

67. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint. Plaintiff asserts these claims on behalf of himself and members of the IDNC Class.

68. 47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are

made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised."

69. The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of [e.g., 47 C.F.R. § 64.1200(d).]" 47 U.S.C. § 227(c)(5). *See also* 47 C.F.R. § 64.1200(d)(3) (liability for company specific DNC list violations).

70. Defendant and its agents made more than one unsolicited telephone call to Plaintiff and members of the IDNC class within a 12-month period in violation of 47 C.F.R. § 64.1200(d).

71. Defendant did not institute minimum procedures required under 47 C.F.R. § 64.1200(d); Defendant consistently fails to honor the requests of Plaintiff and other individuals to stop calling, and specifically to place their name and telephone number on Defendant's internal do not call list and to otherwise maintain an adequate do not call policy required under 47 C.F.R. § 64.1200(d).

72. Defendant and its agents violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to wireless and wireline residential telephones of Plaintiff and members

of the class without instituting minimum procedures required under 47 C.F.R. § 64.1200(d).

73. Defendant willfully violated 47 C.F.R. § 64.1200(d). Defendant knew that it and its agents failed to institute minimum procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendant and that they repeatedly ignored and/or refused to honor Plaintiff and Class Members' requests to be placed on an IDNC list.

74. Plaintiff, individually, and on behalf of the other members of the IDNC Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Classes, respectfully requests that this Court enter judgment and order in their favor against Defendant as follows:

a. An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b. Judgment against Defendant, and in favor of Plaintiff and the other Class Members in the amount of $1,500 per violation of the TCPA as proven at trial;

c. Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d. An award of attorneys' fees and costs, as allowed by law;

a. An award of pre-judgment and post-judgment interest, as provided by law;

b. Leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

c. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: March 5, 2019

By: _____
Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

_____
MATTHEW R. MENDELSOHN

Dated: March 5, 2019