# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Chambers of**
**Michael A. Hammer**
**United States Magistrate Judge**

Martin Luther King Jr, Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07102
(973) 776-7858

October 6, 2025

## LETTER OPINION AND ORDER

RE:   **Niemczyk v. Pro Custom Solar LLC**
**Civil Action No. 19-7846 (MAH)**

**Walters, et al v. Pro Custom Solar LLC**
**Civil Action No. 22-247 (MAH)**

Dear Counsel:

This Letter Opinion and Order will address the parties' differing interpretations of the Settlement Agreement, D.E. 166-2, Ex. 1, which was finally approved on August 18, 2025. Order Granting Mot. for Final Approval, D.E. 179. The parties disagree on the payment of outstanding fees and expenses currently owed to the Claims Administrator, Angeion. The parties raised this dispute via a joint letter filed on September 17, 2025, D.E. 180. Plaintiffs argue Momentum is responsible for satisfying the outstanding Claims Administration Expenses on an as-incurred basis. Momentum argues Claims Administration Expenses are to be drawn from the Common Fund, into which Momentum must make its first payment of $1,000,000 by November 18, 2025, and before which Momentum has no obligation to satisfy the Claim Administration Expenses. Because of that looming payment date, the parties seek an expedited resolution. For the reasons that follow, the Court adopts Plaintiffs' position.

1

## I.    BACKGROUND

Because the Court writes primarily for the parties, it assumes familiarity with the underlying facts and procedural history.  Suffice it to say, Plaintiff Thomas Niemczyk ("Plaintiff") filed this class action matter on March 5, 2019.  Compl., D.E. 1.  Plaintiff sought injunctive relief and monetary damages, alleging Defendant Pro Custom Solar d/b/a Momentum Solar ("Defendant" or "Momentum") unlawfully violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., by making unsolicited telephone marketing calls.  *Id.* ¶ 1.  At some point, this case was consolidated with another, No. 2:22-cv-0247, *Walters et al. v. Pro Custom Solar, LLC.*  Because the cases were litigated as one, this Letter Opinion and Order refers to the plaintiffs, generally, as "Plaintiffs."

## II.    CURRENT DISPUTE

### a.  Plaintiffs' arguments

Plaintiffs argue Momentum is currently in breach of the settlement agreement for failing to pay the Claims Administrator, Angeion Group ("Angeion"), for costs incurred for services rendered in sending out class notices.  D.E. 180, at 4.  Plaintiffs' argument primarily relies on Section V(B)(2) of the Settlement Agreement, discussed below.  Plaintiffs also argue the Settlement Agreement clearly delineates Momentum's payment obligations, such that Momentum's "mathematical uncertainty" arguments "ring hollow."  *Id.* at 6.  Plaintiff additionally notes an email exchange between representatives of Angeion and Momentum, which they submit highlights that Angeion believes the Claims Administration Expenses currently owed are separate from the $1,000,000 payment Defendant must pay into the Common Fund on November 18, 2025.  *Id.* at 5.  Finally, Plaintiff notes an exchange at the final approval hearing in which the Court agreed with Plaintiffs' interpretation of the Settlement Agreement.  *Id.* at 6-7.

### b.  Momentum's arguments

Defendant argues that Claims Administration Expenses are to be drawn from the Common Fund.  *Id.* at 2.  Citing various sections of the Settlement Agreement, Momentum asserts a plain reading of the agreement's terms supports Momentum's position that its upcoming November 18, 2025 $1,000,000 payment into the Common Fund should be used to pay Angeion its Claims Administration Expenses.  *Id.* at 2-3.  Finally, Momentum argues that adopting Plaintiffs' position would lead to Momentum paying an excess of the agreed-upon price into the Common Fund and warns of the present issue reoccurring.  *Id.* at 3-4.

### GOVERNING LAW[1]

Under New Jersey law, settlement agreements are "governed by [the general] principles of contract law."  *Savage v. Twp. of Neptune*, 276 A.3d 685, 693 (N.J. Super. Ct. App. Div. 2022) (alteration in original) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts."  *Brundage v. Est. of Carambio*, 951 A.2d 947, 961-62 (N.J. 2008) (quoting *Pascarella v. Bruck*, 462 A.2d 186, 190 (N.J. Super. Ct. App. Div. 1983)) (internal quotation marks omitted).  Accordingly, a "court cannot make a new and better contract for [the parties] than they made for themselves."  *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1193 (N.J. Super. Ct. App. Div. 2019) (citing *Cypress Point Condo. Ass'n v. Adria Towers*, 143 A.3d 1180, 1193 (N.J. 2016)).  "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear."

---

[1]  Section XIV(E) of the Settlement Agreement stipulates that New Jersey law governs the resolution of any dispute arising under the agreement.

3

*Quinn v. Quinn*, 137 A.3d 423, 429 (N.J. 2016).

"A court's objective in construing a contract is to determine the intent of the parties." *Kernahan v. Home Warranty Adm'r of Fla. Inc.*, 199 A.3d 766, 777 (N.J. 2019). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" *Barila v. Bd. of Educ. of Cliffside Park*, 230 A.3d 243, 255 (N.J. 2020) (quoting *Quinn*, 137 A.3d at 429). "The court's role is to consider the agreement's terms 'in the context of the circumstances under which it was written,' 'accord to the language a rational meaning in keeping with the expressed general purpose[,]' and apply the agreement accordingly." *Accounteks.Net v. CKR Law, LLP*, 294 A.3d 1187, 1193-94 (N.J. Super. Ct. App. Div. 2023) (alteration in original) (quoting *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006)).

Considering these principles, the Court turns to the Settlement Agreement's terms.

## III.    SETTLEMENT AGREEMENT TERMS

Section I of the Settlement Agreement defines several key terms. "Claims Administration Expenses" are defined as "Class Notice expenses and other expenses incurred by the Settlement Claims Administrator in administrating this Settlement." D.E. 166-2 § I(C). The "Common Fund" is defined as "the fund described in Section III of this Settlement that will be used to pay any attorney's fees, costs, and expenses, any Claims Administration Expenses, and all payments due to any Settlement Class Members under this Settlement." *Id.* § I(J). Section I(Z) designates Angeion as the Settlement Claims Administrator.

Section III details Defendant's payment obligations in exchange for the release of all claims. Section III(A) provides what this Letter Opinion and Order describes as the "standard"

4

payout:

> Common Fund:  Momentum shall pay $10 million over five (5) years into a Common Fund to be administered by the Claims Administrator.  The first payment in the amount of $1,000,000 shall be paid into the Common Fund within 90 days ("Initial Payment Date") of the Court issuing the Final Order and Judgment.  Each subsequent payment into the Common Fund shall be due on the first, second, third, fourth and fifth anniversary of the Initial Payment Date in the amounts of $2.0 million, $1.25 million, $1.75 million, $1.75 million and $2.25 million.  On the sixth anniversary of the Initial Payment Date, Momentum shall pay $1.2 million into the Common Fund, and then pay an additional $1.2 million annually thereafter for 9 more years until an additional $12 million has been paid for a total of $22 million."

Sections III(B) and (C) establish alternative payment options.  Section III(B) provides that if "Liquidity Event" occurs, Momentum shall provide 12% of those proceeds into the Common Fund, capped at $30 million.  *Id.* at 14.  Section III(C) establishes a "QuickPay Option" allowing Momentum to satisfy its payment with $20 million so long as that payment is made within seven years.  *Id.*  Section III(E) further supports these "caps" on Momentum's monetary obligation.

Section III(G) provides for the Timing of Payments into the Common Fund:

> All payments shall be paid into the Common Fund when due, even if the Settlement is otherwise on appeal.  Should the Settlement be finally reversed on appeal, all Settlement payments made by Defendant into the Common Fund, with the exception of Claims Administration Expenses that have been incurred to date, shall be returned within 30 days thereafter.  All Claims Administration Expenses are to be paid by Defendant when incurred even if the Settlement is otherwise terminated, not approved, or overturned on appeal, and are non-refundable.

Section III(H) further provides for the Timing of Payments to Settlement Class Members:

> Class Member distributions shall only be paid after the Effective Date to the Settlement.  Payments to Class Members shall be made as soon as practicable at the discretion of the Claims Administrator

5

> after each time at least $1,000,000 is accumulated in the Common
> Fund for the benefit of Class Members after the payment of any
> Claims Administration Expenses and attorneys' fees, costs, and
> expenses that may be due.

Section V(B)(2) further sets forth Momentum's payment obligations to Angeion

regarding Claims Administration Expenses:

> Momentum shall pay all Claims Administration Expenses at the
> time those costs and expenses are incurred. Claims Administration
> Expenses shall count against the total $22 million cap to the
> Common Fund set out in Section III(A), the $30 million cap to the
> Common Fund set out in Section III(B), and the $20 million cap to
> the Common Fund set out in Section III(C). However, the
> payment of Claims Administration Expenses shall not offset the
> requirements to otherwise make payments into the Common Fund
> under Sections III(A), (B), and (C) in the amounts specified therein
> until the caps are fully paid off in their respective amounts as set
> out in Sections III(A), (B), and (C).

## IV.    ANALYSIS

The Court finds the Settlement Agreement's terms: (1) are not ambiguous, and (2)

support Plaintiffs' position. Momentum primarily argues that Settlement Agreement § I(J)

supports its position that Claims Administration Expenses are to be paid out of the Common

Fund. Plaintiffs seemingly agree, stating "there is no dispute that all Claims Administration

Expenses count against the total amount that Momentum must pay into the Common Fund,"

regardless of whether Momentum pays under the "standard" payout plan, the "Liquidity Event"

plan, or the "Quickpay Option." D.E. 180, at 4.

Momentum, however, incorrectly categorizes the logical conclusion of Plaintiffs'

position being "that the Common Fund [would] be unnecessarily over-funded by not allowing

the Common Fund to be used for Claims Administration Expenses." *Id.* Under the Settlement

Agreements terms, the Common Fund cannot be "unnecessarily over-funded," because the

Settlement Agreement places hard caps on Momentum's payment obligations of $20 million, $22 million, or $30 million, based on the applicable payment plan.

The question then is whether the expenses that Momentum currently owes to Angeion can be drawn from Momentum's first $1,000,000 payment due on November 18, 2025, or whether Momentum owes those outstanding fees in addition to that first payment. The Court finds the answer in Settlement Agreement §§ III(G) and V(B)(2).

Section III(G) begins with "All payments shall be paid into the Common Fund when due, even if the Settlement is otherwise on appeal. Should the Settlement be finally reversed on appeal, all Settlement payments made by Defendant into the Common Fund, with the exception of Claims Administration Expenses that have been incurred to date, shall be returned within 30 days thereafter." If Section III(G) ended there, it potentially supports Momentum's position that the first Common Fund payment under Section III(A)'s "standard" payout would cover the Claims Administration Expenses. However, Section III(G) continues, "All Claims Administration Expenses are to be paid by Defendant when incurred even if the Settlement is otherwise terminated, not approved, or overturned on appeal, and are non-refundable." Reading both portions of Section III(G) together clarifies Momentum's payment obligations: Momentum owes Angeion a payment that is due when Angeion incurs Claims Administration Expenses, and "[a]ll payments shall be paid into the Common Fund when due."

Settlement Agreement § V(B)(2) provides further support for Plaintiffs' position. Section V(B)(2) reiterates that "Momentum shall pay all Claims Administrations Expenses at the time those costs and expenses are incurred." Momentum need not worry about "mathematical uncertainty," because "Claims Administration Expenses shall count against the total $22 million cap to the Common Fund set out in Section III(A), the $30 million cap to the Common Fund set

out in Section III(B), and the $20 million cap to the Common Fund set out in Section III(C)." But Momentum's Claims Administration Expenses "shall not offset the requirements to otherwise make payments into the Common Fund under Section III(A), (B), and (C) in the amounts specified therein until the caps are fully paid off in their respective amounts as set out" in those sections. *Id.*

In other words, Momentum currently owes Angeion for the Claims Administration Expenses. Those payments were to be made into the Common Fund, due when incurred. Those payments also do not affect Momentum's obligations to otherwise make required payments into the Common Fund, meaning the first $1,000,000 payment due on November 18, 2025 pursuant to Section III(A). Because the Claims Administration Expenses already owed will count against the total cap Momentum must pay, Momentum need not worry about overfunding the Common Fund – once Section III(a)'s $22 million cap is reached, Momentum satisfies its payment obligation.

Because the instant dispute can be settled within the four corners of the Settlement Agreement, use of extrinsic evidence is not necessary. However, the Court notes that its ruling today is consistent with its understanding of Momentum's required payments pursuant to the Settlement Agreement during the final approval hearing:

> MR. KRIVOSHEY: . . . There are some issues that have come up that are "small fly in the ointment," if you will, in terms of payment of administration costs – because Angeion hasn't been paid, or maybe it's been paid but only $50,000 out of more [than] $500,000 that's apparently due. But there's not really motion practice pending before you. I just wanted to flag it because I didn't want to upset the Court if we're back in 90 days dealing with that issue.
>
> THE COURT: Anything you want to say to that, Mr. Cotton?

8

MR. COTTON:  I don't anticipate we'll be back in 90 days, Your Honor.  I'm optimistic on that front.

And as Mr. Krivoshey noted, there was a dispute between Momentum and Angeion as to the timing of the payment, but to the best of our understanding – we were all copied on the same email – that appears to have been resolved.  And in any event, the payment and funding of the common fund is going to – or at least the coup de grâce for whatever might remain in terms of a balance for Angeion.

THE COURT:  Okay.

MR. KRIVOSHEY:  Your Honor, if I may, this is actually where the disagreement is.

The settlement says that claims administration expenses are due at time those costs [and] expenses are incurred.  That is section 5(B)(2).

THE COURT:  Got it.

MR. KRIVOSHEY:  It then says that the claims administration expenses shall not offset the requirements to otherwise make payments into the common fund under sections 3 (A), (B), and (C) in the amount specified therein until the caps are fully paid off.

So what that means to us, the way we think is the only reasonable reading of this is that Angeion is due to be paid $550,000 as of a few months ago, and that within 90 days of the approval of the settlement, the first million dollars is owed, as Your Honor recited before.

I think what is happening here is that the defendant is waiting until that million-dollar payment is due and then intends to pay off the balance of that $550,000 out of that million dollars due.

What is actually owed is $550,000 today plus a million dollars 90 days from approval.

So within 90 days, Momentum is going to owe about 580-or-so-thousand dollars, not a million dollars.

And so that's why I believe there's a chance that we're back in 90 days because we think Momentum is going to owe

about $1.6 million by that point –

(Simultaneous conversation)

THE COURT:  Right.  I was going to say, if I understand your position correctly – and frankly, Mr. Cotton, this is how I read the settlement as well – basically there are two distinct numbers, right?  There is the claims fund – here it would be a million dollars within 90 days of final approval.  But that's distinct from paying Angeion because Angeion's incurring costs on a – basically as it goes forward with the claims administration process, right?  In other words, the million dollars that it's paid for the class is not Angeion money.  That's a separate payment by the defense, right?

MR. COTTON:  That is correct, Your Honor.  And I'm trying to pull up the portion of the Settlement Agreement now, and I believe I have it here.

But in effect, I believe the view is that, and if I'm misreading it – I really don't want to just start reading on the record – I don't want to just start reading on the record and then come to the conclusion, upon finishing it, that I am actually not reading the section –

THE COURT:  I understand.  Right.

Look, why don't we do this?  At least that's the way I do read it.  I do read it . . . consistently with Mr. Krivoshey's reading of it, and, frankly, I think that's the only way you could even harmonize it with the payment structure to the class.

But, look, if there is an issue, certainly within the next, say, 30 days – because if there's an issue, it's going to manifest itself within the next 30 days; there's no reason to wait for the next 90 days because Angeion has to be paid.  I'd rather resolve that issue before we get to 90 days out from today and the class is waiting for their money, which is basically the structure of which, at least forms part of the basis . . . for my approval of the settlement today.  It's not just the terms of it, it's the structure.

So if there is an issue, you folks will let me know within the next 30 days.  Okay?  And we'll resolve it.

[D.E. 181:28-22 to 31-24.]

Accordingly, the Court finds in favor of Plaintiffs and orders Momentum to pay the current outstanding fees due and owing to Angeion Group in addition to its first $1,000,000 payment on November 18, 2025.

The foregoing is SO ORDERED on this 6th day of October 2025.

Michael A. Hammer
United States Magistrate Judge

11